IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ebony Moore, individually and : 
on behalf of all others
similarly situated,                    :

          Plaintiffs,                   :

     v.                                 :     Case No. 2:15-cv-2701

Aerotek, Inc.,                          :     JUDGE GEORGE C. SMITH
                                              Magistrate Judge Kemp
          Defendant.                    :

AND                                     :

Jose Rubio-Delgado,                     :     Case No. 2:16-cv-1066

individually and on behalf              :     JUDGE GEORGE C. SMITH
of all others similarly                       Magistrate Judge Kemp
situated,                               :

          Plaintiffs,                   :

     v.                                 :

Aerotek, Inc.                           :

          Defendant.                    :

REPORT AND RECOMMENDATION

     This matter has been referred to the undersigned Magistrate
Judge to issue a Report and Recommendation on Plaintiffs'
unopposed motion for final approval of class action settlement
(Case Nos. 2:15-cv-2701 Doc. 33 and 2:16-cv-1066 Doc. 114) and
Plaintiffs' motion for attorneys' fees, costs, and class
representative service awards (Case No. 2:15-cv-2701 Doc. 30 and
Case No. 2:16-cv-1066 Doc. 114). For the reasons set forth below,
the Court will recommend that both motions be granted.

I.  <u>Background and Summary of Fairness Hearing</u>

For ease of reference, the summary of the procedural history and settled claims contained in the unopposed motions to approve settlement will be repeated here.

On July 3, 2013, Plaintiff Rubio-Delgado filed his class action complaint in the United States District Court for the Northern District of California, alleging that Defendant had violated 15 U.S.C. § 1681b(b)(2) by procuring background checks on him and putative class members without first providing a disclosure that a report would be obtained in a document consisting solely of the disclosure. (ECF No. 1.) Specifically, Plaintiff alleged that Defendant's disclosure contained a liability release and other extraneous information beyond that allowed under the FCRA. (*Id.*) The action was stayed in November 2013 to facilitate settlement discussions, which resulted in a settlement that was ultimately not approved by the court.3 (ECF No. 97-2 ¶3.) Following the denial of approval, the parties stipulated to continue the stay pending resolution of *Spokeo, Inc. v. Robins*, No. 13-1339 (2015), and *Syed v. M-I, LLC*, No. 14-17186 (9th Cir. 2014). (*Id.* ¶ 4.)

On July 15, 2015, Plaintiff Moore filed a separate class action complaint in the Court of Common Pleas of Franklin County, Ohio, also alleging that Defendant had violated 15 U.S.C. §1681b(b)(2) by procuring background checks without first providing a stand-alone disclosure, and, in addition, alleging that Defendant had violated 15 U.S.C. § 1681b(b)(3) by failing to provide her and putative class members with a copy of their background check and summary of rights prior to taking adverse employment action based in whole or in part on the background check ("pre-adverse action notice"). (*Moore* ECF No. 3.) Plaintiff alleges that she did not receive pre-adverse action notice as required, and that she was terminated on the basis of her background check without having the opportunity to review or dispute her report, which contained inaccuracies. (*Id.*) Defendant removed Moore's action to this Court on August 7, 2015. (*Moore* ECF No. 1.) The parties then stipulated to stay the case to facilitate settlement discussions. (ECF No. 97-2 ¶5.)

In early 2016, counsel for Plaintiffs in both actions and Defendant's counsel engaged in arms-length

settlement discussions, exchanged pertinent documents
and data, and ultimately attended a joint mediation on
April 11, 2016, with Professor Eric D. Green of
Resolutions LLC. (*Id.* ¶ 6.) Following a second joint
mediation on May 4, 2016, and subsequent negotiations
facilitated by Professor Green, all parties agreed to a
global resolution on July 29, 2016 through the
execution of a memorandum of understanding. (*Id.* ¶ 7.)
On October 7, 2016, the parties formalized the
understanding in the Settlement Agreement. After the
execution of the Agreement, Plaintiff Rubio-Delgado
moved to transfer his action to this Court, where it
was consolidated with Plaintiff Moore's case for the
purposes of facilitating settlement approval. (ECF No.
91.)

(Case No. 2:15-cv-2701 Doc. 33, pp. 2-4).

Although the Moore and Rubio-Delgado cases maintain separate
dockets with this Court, they were consolidated by Order of this
Court on November 23, 2016,(Doc. M-26). For the remainder of this
Report and Recommendation, references to the Moore docket (Case
No. 2:15-cv-2701) shall be cited as "Doc. M-" and references to
the Rubio-Delgado docket (Case No. 2:16-cv-1066) shall be cited
as "Doc. R-". In December of 2016, Plaintiffs filed unopposed
motions for preliminary settlement approval, which the Court
approved. (Doc. R-97, 100). On June 14, 2017, the parties filed
identical motions in both cases seeking final approval of the
settlement.  A fairness hearing was held before the Magistrate
Judge on June 22, 2017, at which Plaintiffs' counsel summarized
the settlement details as follows.

The following settlement classes were conditionally approved
by the Court with respect to the claims asserted against Aerotek,
Inc. ("Aerotek"):

**1681b(b)(2) Class:** All class members for whom Aerotek's
records indicate that the background check Aerotek
obtained on the Settlement Class Member was designated
as "favorable."

3

**1681b(b)(2) Adjudicated Class:** Any member of the class to whom Aerotek's records indicate that a pre-adverse action notice letter was sent.

**1681b(b)(3) Class:** All class members who were placed on Aerotek's payroll, designated by Aerotek's HRIS system as having separated for failing the background check, and were sent a pre-adverse action letter within 30 days of termination.

Aerotek has agreed to provide both monetary and non-monetary relief in consideration for the release of the settlement class members' claim (the "Class"). It agreed to pay $15,000,000 into a common settlement fund. Subsequent to the deductions of attorneys' fees, costs, administration costs, and class representative service awards, the funds are to be distributed *pro rata* to all Class members, with each member's distribution calculated on the bases of which of the three designated classes. Members in the 1681b(b)(2) Class shall receive one share; members in the 1681b(b)(2) Adjudicated Class shall receive 1.67 shares; and those in the 1681b(b)(3) Class shall receive six shares. Individuals who fall into more than one class shall receive a distribution for the most valuable class in which they are categorized. Any funds remaining after the close of the time period within which to cash checks shall be re-distributed to 1681b(b)(3) class members who cashed their original checks. Any funds remaining after that redistribution will be donated to the National Consumer Law Center.

The non-monetary relief agreed upon provides the Class members the opportunity to participate in the Aerotek Community for three months from the effective settlement date, which provides members, among other things, preferred access to job postings and assistance with resume preparation. Class members will also be permitted to request copies of the background checks performed on them by Aerotek by so requesting on a website provided by Aerotek. Also significant is the fact that Aerotek

4

has rectified the issue that gave rise to this litigation. The Class was notified of the proposed settlement via a mailing on March 15, 2017, and a website was made available to the members which provided them with general information and documents, as well as a link to enable them to update their personal information or request their consumer report. There was also a toll-free telephone number listed, which provided responses to members' frequently asked questions.

There were 72 timely opt-outs received from Class members, and one *pro se* objection, by Mr. Larry Weathers. (Doc. R-114-3, Ex. B). Mr. Weathers does not raise any particular issues he has with the settlement itself, but claims that he was discriminated against by Aerotek under the Americans with Disabilities Act ("ADA"). Mr. Weathers' objection was discussed at the fairness hearing and the parties were in agreement that Mr. Weathers' acceptance of the settlement in this matter would not preclude any ADA or other claims unrelated to this FCRA action which he may have against Aerotek. Class members were given the opportunity to challenge which settlement class they were categorized in, and 110 valid challenges were received and duly adjusted. Counsel for Aerotek spoke briefly at the fairness hearing and had no objection to the settlement terms, but clarified for the record that Aerotek did not admit liability as part of those terms. The Court will now address the pending motions.

II. <u>Unopposed Motion for Approval of Class Action Settlement</u>

Settlements of class actions are governed by Fed.R.Civ.P. 23(e), which provides that a court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making its decision, the Court should consider the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense,

and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." In re Polyurethane Foam Antitrust Litig., 2015 WL 7348208, *3 (N.D. Ohio Nov. 19, 2015), quoting International Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. General Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007). An examination of each of these factors weighs in favor of final approval of the class settlement agreement in this case.

## A. Risk of Fraud or Collusion

Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion. See e.g. IUE-CWA v. General Motors Corp., 238 F.R.D. 583, 598 (E.D. Mich. 2006)("Courts presume the absence of fraud or collusion unless there is evidence to the contrary"). Stated differently, "the courts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered." Brent v. Midland Funding, LLC, 2011 WL 3862363, *15 (N.D. Ohio Sept. 1, 2011), citing 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.51 (4th ed. 2002). In addition, if the court finds that the settlement agreement is fair, it may assume that there was no risk of fraud or collusion in negotiating the settlement. See IUE-CWA, 238 F.R.D. at 599.

In this case, both the class representatives and Aerotek agree that the settlement agreement is the result of arms' length, good faith negotiations which took place over the course of several years. The Court has no reason to believe that the settlement agreement is the result of fraud or collusion, and

neither party to this case has argued that fraud or collusion is an issue in this settlement. Based on the foregoing, the Court finds that there was no fraud or collusion in negotiating the settlement terms, which weighs in favor of final approval of the settlement.

B. The Complexity, Expense, and Likely Duration of the Litigation

"Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." In re Telectronics Pacing Sys., Inc., 137 F.Supp.2d 985, 1015 (S.D. Ohio 2001). Although this litigation commenced nearly four years ago, when the Rubio-Delgado case was filed, it has been stayed for much of that time. Thus, much remains to be done before the case would reach a resolution through motions and/or a trial. Neither formal or expert discovery, retention of expert witnesses nor motions for class certification has yet occurred. Each of these activities would impose additional expense and delay to the parties, so it is clearly advantageous to all to reach an agreeable settlement. See Connectivity Systems Inc. v. Nat'l City Bank, 2011 WL 292008, *3 (S.D. Ohio Jan. 26, 2011) ("the difficulty Named Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement Agreement"). In addition to the expense and time that discovery, the parties would likely engage in significant motions practice, as well as possibly a trial and an appeal. Given these circumstances, this factor weighs in favor of final approval of the proposed settlement.

C. The Amount of Discovery Engaged in by the Parties

The amount of discovery engaged in by the parties is a factor for consideration because, "[i]n order to realistically and accurately assess the strength of their case and the

propriety of settlement, experienced attorneys need sufficient information." <u>Lonardo v. Travelers Indem. Co.</u>, 706 F. Supp.2d 766, 782 (N.D. Ohio Mar. 31, 2010), <u>citing</u> <u>In</u> <u>re</u> <u>Telectronics</u>, 137 F. Supp.2d at 1015 (noting that sufficient discovery had taken place such that the settlement was negotiated with "the knowledge necessary to make an intelligent, informed decision in this matter"). In this case, although formal discovery had not yet taken place when the settlement was reached, the parties had exchanged a substantial amount of information and had been able to assess each side's strengths and weaknesses and potential value of the claims. In their unopposed motion, Plaintiffs assert that the parties had "(1) investigated the claims; (2) researched and drafted the complaints in both cases; (3) met and conferred regarding ESI; (4) researched and briefed motions to stay the cases; (5) exchanged and reviewed pre-mediation written and documentary discovery, which was ultimately confirmed via sworn interrogatory responses; (6) researched and drafted multiple comprehensive mediation briefs, each of which canvassed the applicable law and risks of litigation both as to the certification and the merits; and (7) prepared for and participated in two separate mediation sessions, and extended settlement negotiations." (Doc. M-33). "Such negotiations allowed all parties to fully explore the factual and legal grounding of their positions in multiple mediation sessions. Such an exchange of information facilitat[es] a candid perspective on the merits and risks of the parties' respective cases and allow[s] them to agree upon an appropriate settlement value." <u>Dick v. Sprint Communications Co. L.P.</u>, 297 F.R.D. 283 (W.D. Ky. 2014). The substantial exchange of information and ongoing negotiations by the parties point towards approval of the settlement.

D. <u>The Likelihood of Success on the Merits</u>

An examination of the fairness of a settlement necessarily requires the Court to examine the likelihood of success on the merits if the litigation were to continue. <u>See</u> <u>International Union, United Auto., Aerospace, and Agr. Implement Workers of Am.</u>, 497 F.3d at 631. Although examination of this factor does not require the Court to resolve the outstanding legal or factual issues on the merits, the Court cannot adequately assess the fairness of the proposed settlement without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." <u>Id.</u>, <u>quoting</u> <u>Carson v. American Brands, Inc.</u>, 450 U.S. 79, 88 n.14 (1981).

In this case, Plaintiffs sought statutory damages under the FCRA, which provides for damages between $100 and $1,000 if the plaintiff can prove that violation of the statute was willful. 15 U.S.C. §1681n(a)(1). To obtain statutory damages for an FCRA violation, plaintiffs must meet a very high standard or proof, and may even lose after a successful trial verdict. <u>See</u> <u>Smith v. LexisNexis Screening Solutions, Inc.</u>, 837 F.3d 604, 611 (6th Cir. 2016) (reversing jury verdict, finding that the consumer reporting agency's conduct did not constitute a willful violation of the FCRA); <u>Domonoske v. Bank of America, N.A.</u>, 790 F.Supp.2d 466, 476 (W.D. Va. 2011) ("given the difficulties of proving willfulness or even negligence with actual damages, there was a substantial risk of nonpayment [for FCRA violations]"). The FCRA does not provide specific guidance to courts as to the appropriate relief for a statutory violation. However, to recover actual damages Plaintiffs would need to prove that they suffered an actual injury; for example, that they lost job opportunities or their employment was terminated as a result of Aerotek's actions. <u>See</u>, <u>e.g.</u>, <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95,

102 (1983) (A plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged conduct).

The settlement at issue provides for a common fund of $15,000,000, and per class member payments of between $13-$80. (Doc. 33, p. 12). In the unopposed brief, Plaintiffs assert that given the breadth of violations, as well as the size of the Class, it is "unlikely that Plaintiffs would achieve an award of statutory damages which, on a per person basis, would substantially exceed $100." Id. Plaintiffs point out that the differing amounts allocated to each category of class member reflect the varying extent of injury to each type of member, with the worst affected being those who were actually fired based on the background check and were not sent the pre-adverse action notice until after the adverse action. In evaluating the fairness of a settlement, this Court has acknowledged that where there are differing levels of injury to class members, it is appropriate to allocate settlement funds accordingly. Johnson v. Midwest Logistics Systems, Ltd., 2013 WL 2295880, *4 (S.D. Ohio May 24, 2013). Plaintiffs also point out that in addition to the monetary benefits, the settlement in this case provides valuable non-monetary benefits to the Class which may not have been achievable by taking the litigation to completion.

In short, Plaintiffs' unopposed motion establishes that the settlement agreement strikes a satisfactory balance between the likelihood of success on the merits and the relief offered in the settlement. In addition, there is a real risk that the Class could recover nothing if this litigation were to continue. Accordingly, the Court finds that this factor weighs in favor of final approval of the proposed settlement.

E. <u>The Opinions of Class Counsel and Class Representative</u>

At the fairness hearing and in the brief in support of final approval, Class Counsel and Aerotek indicated that they find the settlement amount to be reasonable. The class representatives have stayed abreast of developments in the case and reviewed and support the approval of the settlement. (Doc. R-104-1, ¶10). The parties in this case are represented by counsel with substantial experience in class action litigation, and FCRA cases in particular. (Doc. R-97). Such counsel's "opinion that the proposed settlement is fair to the class is entitled to considerable weight. . ." <u>Dick</u>, 297 F.R.D. at 296; <u>see</u> <u>also</u> <u>Hainey v. Parrott</u>, 617 F. Supp.2d 668, 675 (S.D. Ohio 2007)(finding that experienced counsel's "opinion that the proposed settlement is fair, reasonable, and adequate is entitled to considerable weight"). Based upon the agreement of the class representatives and the parties' experienced and knowledgeable counsel, the Court finds that this factor weighs in favor of final approval of the proposed settlement.

F. <u>The Reaction of Absent Class Members</u>

The parties are in agreement that the form, substance, and delivery of the class notices were fair and reasonable and fairly apprised class members of the terms of the proposed settlement, how they could seek additional information, opt out of the settlement, or object to the settlement. Only 72 of the more than 588,000 Class members in this case opted out of the settlement (0.01% of the total). One Class member objected, but based on reasons unrelated to the FCRA claims. Where "only a small number of objections to a class action settlement are received, that fact can be viewed as indicative of the adequacy of the settlement. . . minuscule percentage of objections relative to the size of the Class weighs in favor of finding the [settlement] to be fair, reasonable and adequate." <u>Smith v. Ohio Dep't of</u>

<u>Rehabilitation and Correction</u>, 2012 WL 1440254, *20 (S.D. Ohio April 26, 2012) (internal citations omitted). This factor also weighs in favor of final approval of the settlement.

## G. <u>The Public Interest</u>

Finally, the Court considers the public interest in approving the proposed settlement. "Public policy generally favors settlement of class action lawsuits." <u>Hainey v. Parrott</u>, 617 F. Supp.2d 668, 679 (S.D. Ohio 2007). The settlement would avoid prolonged litigation, resulting in the conservation of both the parties' resources and the Court's resources. <u>See</u> <u>In</u> <u>re</u> <u>Telectronics Pacing Sys., Inc.</u>, 137 F. Supp.2d at 1025 (finding the settlement was in the public interest because, *inter alia*, "it frees...the valuable judicial resources of this Court"). Based upon the foregoing, this factor weighs in favor of final approval of the proposed settlement.

## H. <u>Summary</u>

The Court has reviewed and considered the record in this case, including the representations made by counsel at the fairness hearing held on June 22, 2017. As set forth above, the Court has considered the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in by the parties, the likelihood of success on the merits, the opinions of class counsel and the class representative, the reaction of the absent class members, and the public interest, and it finds that all seven factors weigh in favor of final approval of the proposed settlement. In addition, counsel for the parties are in agreement with this assessment. Thus, in accordance with Fed. R. Civ. P. 23(e), this Court finds that the settlement agreement is fair, reasonable, and adequate, and that approval is in the best interest of the Class. The Court will now examine the reasonableness of the attorneys' fees set forth in the settlement agreement.

## IV. Motion for Attorneys' Fees, Costs and Class Representative Service Awards

Pursuant to Fed.R.Civ.P. 23(h), Plaintiffs move the Court for an Order approving the following payments in connection with the settlement: (1) attorneys' fees to Class Counsel in the amount of one-third of the common fund ($5,000,000); (2) reimbursement of Class Counsel's out-of-pocket costs in the amount of $67,964.27; (3) Class Representative Awards of $5,000 each to Plaintiffs Moore and Rubio-Delgado, and $3,000 each to Plaintiffs Hubbard and Burgess; and (4) third- party settlement administration charges in the amount of $856,849.87. The Court must determine whether the amount of attorneys' fees is fair and reasonable under the circumstances of this case. See Moulton v. United States Steel Co., 581 F.3d 344, 352 (6th Cir. 2009). Although the Court is given great deference in granting an award for attorneys' fees, it must set forth its reasons for "adopting a particular methodology and the factors considered in arriving at the fee." Id., quoting Rawlings v. Prudential-Bache Prop., Inc., 9 F.3d 513, 516 (6th Cir. 1993).

### A. The Methodology

The settlement agreement uses the percentage of the fund method for calculating the award of attorneys' fees. As Plaintiffs' brief points out, many courts within the Sixth Circuit have accepted this method for calculating the award of attorneys' fees with a percentage of the award, even when the underlying claims are brought under fee-shifting statutes like the FCRA. Clevenger v. Dillards, 2007 WL 764291 (S.D. Ohio March 9, 2007); Connectivity Sys., Inc. v. Nat'l City Bank, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011). The advantages of the percentage of the fund method are that: "it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early

settlement, which avoids protracted litigation." <u>Rawlings v.</u>
<u>Prudential-Bache Properties, Inc.</u>, 9 F.3d 513, 516-17 (6th Cir.
1993). Fee awards in common fund cases generally are calculated
as a percentage of the fund created, with the percentages awarded
typically ranging from 20 to 50 percent of the common fund
created. <u>In</u> <u>re</u> <u>Dun & Bradstreet Credit Servs. Customer Litig.</u>,
130 F.R.D. 366, 372 (S.D. Ohio 1990); <u>cf</u>. <u>In</u> <u>re</u> <u>Telectronics</u>
<u>Pacing Sys., Inc.</u>, 137 F. Supp.2d at 1042 (accepting the
"percentage-of-the-fund" method, but noting that "the fee
percentages range from 10 to 30 percent (10%-30%) of the common
fund created"). Given that the percentage of the fund method has
been accepted within the Sixth Circuit for calculating an award
of attorneys' fees, the Court will accept that method. Further,
because the one-third fee requested falls within the typical
range for such cases, the Court will adopt that methodology for
calculating the attorneys' fee award in this case. The Court now
turns to the factors considered in arriving at the fee.

B. <u>Factors in Arriving at the Fee</u>

In considering whether a requested attorneys' fee award is
fair, courts should address the following factors: "(1) the value
of the benefit rendered to the plaintiff class; (2) the value of
the services on an hourly basis; (3) whether the services were
undertaken on a contingent fee basis; (4) society's stake in
rewarding attorneys who produce such benefits in order to
maintain an incentive to others; (5) the complexity of the
litigation; and (6) the professional skill and standing of
counsel involved on both sides." <u>Bowling v. Pfizer, Inc.</u>, 102
F.3d 777, 780 (6th Cir. 1996). The Court will address each factor
in turn.

1. <u>The Value of the Benefits to the Class</u>

The value of the benefit rendered to the plaintiff class is among the most important factors to be considered. <u>See</u> <u>Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.</u>, 640 F. Supp. 697, 700 (S.D. Ohio 1986). To determine the value rendered to the settlement class, the court should analyze the merits of the case and the risks associated with continued litigation. <u>See</u>, <u>e.g.</u>, <u>In re</u> <u>Countrywide Fin. Corp. Customer Data Sec. Breach Litig.</u>, 2010 WL 3341200, at *10 (W.D. Ky. Aug. 23, 2010). Here, an examination of the merits of this case and the risks associated with continued litigation demonstrates that the settlement value is substantial. As discussed above, this litigation is in the early stages, no formal discovery had been conducted, and no dispositive motions had been filed. Had the parties engaged in formal discovery and filed dispositive motions, this would have increased the cost significantly. More importantly, Plaintiffs were not guaranteed to succeed had the case proceeded to dispositive motions or a trial. Class members in this case will receive approximately $13-$80 per person. Even if Plaintiffs were successful at trial, each class member's recovery "would likely be much closer to $100 than to $1,000" in FCRA statutory damages. (Doc. 33, p. 12). The Class contained approximately 588,000 members, most with relatively small claims and for which the individual members would have been unlikely to pursue. There is also non-monetary benefit to the Class members, as discussed above. Consequently, this factor supports the reasonableness of an award of $5,000,000 in attorneys' fees as provided in the settlement agreement.

2. <u>The Value of the Services on an Hourly Basis</u>

The next factor requires the Court to examine the value of the services on an hourly basis. This may be done by performing a "crosscheck" of requested fees using Class Counsel's lodestar.

Feiertag v. DDP Holdings, LLC, 2016 WL 4721208, *7 (S.D. Ohio Sept. 9, 2016). This may serve to ensure that a fee award is "roughly aligned with the amount of work the attorneys contributed," and confirm the reasonableness of the fee to be awarded as a percentage of the award. In re Cardinal Health Inc. Sec. Litig., 528 F.Supp.2d 752, 764 (S.D. Ohio 2007).

Class counsel furnished *curriculum vitae*, declarations, and time sheets detailing their work performed on the case to date. (Doc. 30 Exhibits). At the time of the filing of the motion for attorneys' fees, Class Counsel had logged a combined total of $1,073,782.87 in billable time at their standard hourly rates. (Doc. 30, p. 16) Counsel has spent additional time on this matter in preparing for and attending the fairness hearing, responding to Class member inquiries, requesting Class member consumer reports, and other case related activities. According to the Supplemental Declaration of E. Michelle Drake, Class Counsel have expended an additional 122.75 hours, which combined with the lodestar already submitted totals $1,121,647.12.

While the amount of attorneys' fees under the contingency fee exceeds Class Counsel's normal hourly rate, this does not preclude the Court from approving the requested fees. Courts have "broad equity power to supervise the collection of attorney's fees under contingency fee contracts." United States ex rel. Taxpayers Against Fraud v. GE, 41 F.3d 1032, 1047 (6th Cir. 1994). Attorneys' fees "may be awarded by the court if they are 'authorized by law or by the parties' agreement.'" Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan, 995 F.Supp.2d 835, 852 (S.D. Ohio 2014) (quoting Krause v. Rhodes, 640 F.2d 214, 218 (6th Cir. 1981)). Courts should consider "what a knowledgeable class member would have negotiated and agreed to pay at the outset of the case." Id. This Court has recognized that "contingent fees between 25 and 33% of a plaintiff's recovery are

16

the norm, and fees within that range have often been approved by courts within the Sixth Circuit." Id.

"The factors to be considered in determining a 'reasonable' fee under that Rule are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." Id. In this case, Class Counsel and Plaintiffs agreed the contingency fee of 1/3 of the recovery amount, which is within the range of standard contingency fee agreements. Class Counsel achieved a favorable settlement for the Class members and their effective hourly rates have been found reasonable in similar cases. See, e.g., Spano v. Boeing Co., 2016 WL 3791123, *3 (S.D. Ill. March 31, 2016 (approving hourly rates of $460-$998 for attorneys, $309 for paralegals, and $190 for legal assistants); Chakejian v. Equifax Info. Servs., Inc., 275 F.R.D. 201, 216-17 (E.D. Penn. 2011) (finding $700 per hour reasonable for experienced class counsel). This factor weighs in favor of approval of the requested attorneys' fees.

3. Whether Services Were Undertaken on a Contingency Fee Basis

Class Counsel took this case on a contingency fee basis, and have invested time and resources in this matter without any compensation to date. As this Court has recognized, "contingency fee arrangements indicate that there is a certain degree of risk

in obtaining a recovery." <u>In re Telectronics Pacing Sys., Inc.</u>, 137 F. Supp.2d at 1043. As Plaintiffs explain, this case carried a very real possibility of an unsuccessful outcome, and by their very nature "contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." <u>Id</u>. At the time the respective complaints were filed in this matter, there were no obvious indications that a settlement would be reached. In addition, Class Counsel have expended substantial time and resources in reaching this settlement. Where counsel has made significant investments of time, advanced costs, and received no compensation, this typically weighs in favor of granted the requested attorneys' fees. <u>Gentrup v. Renovo Servs., LLC</u>, 2011 WL 3532922, *4 (S.D. Ohio June 24, 2011); <u>see</u> <u>also</u> <u>Dick</u>, 297 F.R.D. at 300. Further, continuing with this litigation rather than settling now carried a number of inheret risks, such as Plaintiffs' burden to prove at trial that Aerotek's violations were wilful in order to receive a statutory damage award. <u>See</u> <u>Domonoske</u>, 790 F.Supp. at 466. This factor supports the reasonableness of the requested attorneys' fee award.

    4. <u>Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others</u>

There is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action matters enable this. <u>In re Telectronics Pacing Sys., Inc.</u>, 137 F.Supp.2d at 1043. In this matter, Class counsel recovered for more than 588,000 individuals who had small value claims. The Supreme Court has recognized that in cases such as this, "most of the plaintiffs would have no realistic day in court if a class action were not available." <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985). Many of the Class members in this case would not have been able or willing to pursue their claim individually, and many more would most likely

not even be aware that they had a claim against Aerotek. "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." Kritzer v. Safelite Solutions, LLC, 2012 WL 1945144 (S.D. Ohio May 30, 2012). In addition, adequate "compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law," such as the FCRA. See Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985). Accordingly, this factor also weighs in favor of approving the requested fees.

### 5. Complexity of the Litigation

"Most class actions are inherently complex," and therefore time consuming. In re Delphi Corp. Sec., Derivative & "ERISA" Litig., 248 F.R.D. 483, 504 (E.D. Mich. 2008). As discussed in the section above addressing the approval of the settlement, this case is no exception. Had the case proceeded, counsel would have had the difficult burden of proving that Aerotek's FCRA violations were willful. Plaintiffs also point out that case law is still developing following the Supreme Court's decision in Spokeo, Inc. v. Robins, --- U.S. --- 136 S.Ct. 1540 (2016), which raised complicated jurisdictional issues that potentially affect this case. In addition, resolving the merits, damages, and procedural issues rather than settling would have been risky, expensive, and time consuming. This factor supports the reasonableness of the requested attorneys' fees.

### 6. Professional Skill of Counsel

The brief filed in support of final approval of the preliminarily approved class settlement agreement and Class Counsel's declarations establish that Class Counsel are experienced and knowledgeable in FCRA litigation, are skilled, and are in good standing. In addition, "[t]he ability...to negotiate a favorable settlement in the face of formidable legal

opposition further evidences the reasonableness of the fee award requested." <u>Dick</u>,<u>supra</u>, <u>quoting</u> <u>In</u> <u>re</u> <u>Delphi Corp. Sec.,</u> <u>Derivative & "ERISA" Litig.</u>, 248 F.R.D. at 504. The professional skill and standing of Class Counsel supports the reasonableness of $5,000,000 in attorneys' fees.

## V. <u>Recommendation</u>

For the reasons set forth above, this Court recommends approval of the settlement amount of $15,000,000, and of Class Counsel's application for $5,069,964.27 in Attorneys' Fees and costs, and for Class Representative Awards of $5,000 each to Plaintiffs Moore and Rubio-Delgado and $3,000 each to Plaintiffs Hubbard and Burgess. The Court further recommends approval and authorization of an amount not to exceed $856,849.87 to cover the Settlement Administrator's fees and costs. These amounts are to be deducted from the Settlement Funds as set forth in the Settlement Agreement.

## PROCEDURE ON OBJECTIONS

If any party objects to the Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de</u> <u>novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and

Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge
